# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SPF OWNER LLC and <br> PHILADELPHIA 76ERS, L.P. <br><br> Plaintiffs, <br><br> v. <br><br> HARTFORD FIRE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. _____ |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Hartford Fire Insurance Company ("Hartford Fire"), by and through its undersigned counsel, hereby removes this action from the Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. In support of removal, Hartford Fire states as follows:[1]

**I.  INTRODUCTION**

1. On March 9, 2022, Plaintiffs SPF Owner LLC ("SPF") and Philadelphia 76ers, L.P. ("76ers LP") (together with SPF, "Plaintiffs") filed a Complaint against Hartford Fire in the Philadelphia County Court of Common Pleas, Case No. 01065. Plaintiffs served the Complaint on Hartford Fire on March 17, 2022. A copy of the Complaint and accompanying materials are attached hereto as Exhibit A.

---

[1] Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Hartford Fire's rights to assert any defense, including but not limited to those defenses available under Rule 12 of the Federal Rules of Civil Procedure or otherwise.

1

2. This is a declaratory judgment action in which Plaintiffs seek insurance coverage for losses they claim to have incurred due to the COVID-19 pandemic and resulting governmental orders.

3. Plaintiffs allege the SPF "owns the training complex and office building located at 3 Banner Way in Camden, New Jersey 08103 (the 'Complex')," and that 76ers LP "operates the National Basketball Association team known as the Philadelphia 76ers (the 'Team'), which plays its home games at the arena located at 3601 South Broad Street in Philadelphia, Pennsylvania known as the Wells Fargo Center (the 'Center')." Compl. ¶¶ 2-3. Plaintiffs allege that they suffered "direct physical loss of or direct physical damage to the various properties they own and/or use (the 'Covered Properties') and the resultant business interruption losses caused by the" COVID-19 pandemic. *See id.* ¶ 1. SPF's "Covered Properties" allegedly include the Complex, and 76ers LP's "Covered Properties" allegedly include the Complex, the Center, as well as other insured locations. *See id.* ¶ 6.

4. More specifically, as to SPF, Plaintiffs allege that SPF's "various insured properties were covered under special multi-flex commercial property Policy Number 39 UUN JA1512 KI issued by Hartford Fire and effective from October 1, 2019 to October 1, 2020," and that "[a] renewal policy with the same policy number was also issued by Hartford Fire to [SPF] for the October 1, 2020 to October 1, 2021 policy period[.]" Compl. ¶ 7. Copies of these two policies are attached as Exhibits A and B to Plaintiffs' Complaint.

5. As to 76ers LP, Plaintiffs allege that its "insured properties were covered under special multi-flex commercial property Policy Number 39 UUM NX6520 KI issued by Hartford Fire and effective from March 20, 2019 to March 20, 2020," and that "[a] renewal policy with the same policy number was also issued by Hartford Fire to [76ers LP] for the March 20, 2020 to

March 20, 2021 policy period[.]" Compl. ¶ 8. Copies of these two policies are attached as Exhibits C and D to the Complaint.

6. Plaintiffs allege that "[t]he physical presence of COVID-19 resulted in the complete shutdown of the Covered Properties for a significant period of time, and, upon being able to re-open and partially resume operations, COVID-19 caused the Covered Properties to operate at a significantly reduced capacity"; and, as a result, "Plaintiffs suffered significant financial loss." Compl. ¶ 15.

7. Plaintiffs allege that "Hartford Fire has a duty to pay for Plaintiffs' loss of business income occasioned directly by the physical loss of or physical damage to the Covered Properties due to the actual presence of COVID-19, and further occasioned directly by the inability of the Covered Properties to engage in their various intended functions." Compl. ¶ 18. Plaintiffs seek declaratory relief, attorneys' fees, and costs.

## II. BASIS OF REMOVAL

8. This case is properly removable to federal court because it involves a controversy among citizens of different states and an amount in controversy that exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332, 1441, 1446.

### A. There is Complete Diversity of Citizenship

9. SPF "is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 3 Banner Way, Camden, New Jersey 08103." Compl. ¶ 25. After conducting a reasonable, good faith investigation based on publicly available information, Hartford Fire asserts, upon information and belief, that no member of SPF is domiciled in or a citizen of Connecticut. Therefore, upon information and belief, SPF is not a citizen of Connecticut for diversity jurisdiction purposes. *See, e.g.*, *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105, 108-110 (3d Cir. 2015) (explaining that the citizenship of a limited

liability company is determined by the citizenship of its members, and a party asserting diversity jurisdiction need not affirmatively plead the citizenship of each member; it need only perform a reasonable investigation and allege in good faith that the members are not citizens of its state of citizenship).

10. 76ers LP is "a limited partnership formed under the laws of the State of Delaware with its principal place of business located at 3 Banner Way, Camden, New Jersey 08103." Compl. ¶ 26.  After conducting a reasonable, good faith investigation based on publicly available information, Hartford Fire asserts, upon information and belief, that none of the partners of 76ers LP is domiciled in or a citizen of Connecticut.  Therefore, upon information and belief, 76ers LP is not a citizen of Connecticut for diversity jurisdiction purposes.  *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 37 (3d Cir. 2018) (noting the citizenship of a limited partnership is based on the citizenship of its partners); *see also Lincoln Ben. Life Co.*, 800 F.3d at 105, 108-110.

11. Hartford Fire is incorporated in and has its principal place of business in Connecticut.  *See* Compl. ¶ 27.  Hartford Fire is therefore a citizen of Connecticut for diversity jurisdiction purposes.  *See* 28 U.S.C. § 1332(c)(1) (a corporation is a citizen of the state where it is incorporated as well as the state where it has its principal place of business).

12. Accordingly, there is complete diversity of citizenship between the parties.

**B.   The Amount in Controversy Exceeds $75,000**

13. Under 28 U.S.C. § 1332(a), diversity subject matter jurisdiction requires that the matter in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs[.]" Where, as here, a complaint does not seek a specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89

4

(2014). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

14. The amount in controversy for Plaintiffs' request for declaratory relief is "the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted); *see also, e.g.*, *Allstate Vehicle & Prop. Ins. Co. v. Harris*, No. 20-741, 2020 WL 4201598, at *3 (E.D. Pa. July 22, 2020). In this case, the object of the litigation is the value of Plaintiffs' insurance claims, *i.e.*, the amount of money Hartford Fire would pay to Plaintiffs if their COVID-19 claims are covered under the policies.

15. Although Plaintiffs do not quantify their alleged damages, it is readily apparent that the amount in controversy exceeds the jurisdictional threshold of $75,000, exclusive of interest and costs. Plaintiffs allege that they "suffered significant financial loss" due to the COVID-19 pandemic and resulting governmental orders. *See, e.g.*, Compl. ¶¶ 15, 67. According to Plaintiffs, beginning on or around March 19, 2020, "Plaintiffs' Covered Properties were prohibited from operating[.]" *See id.* ¶ 67; *see also id.* ¶ 15 ("COVID-19 resulted in the complete shutdown of the Covered Properties for a significant period of time, and, upon being able to re-open and partially resume operations, COVlD-19 caused the Covered Properties to operate at a significantly reduced capacity."). Plaintiffs allege, for example, that "[i]nstead of being able to allow fans into the Center to enjoy professional basketball and other sporting events, concerts, entertainment events, private special events, training clinics, camps, and tours, the Center had to be closed, and upon its reopening (prior to the widespread use of vaccines), attendance capacity was substantially limited." *Id.* ¶ 13. Plaintiffs also allege that "[i]nstead of allowing the Team to work out, practice for games, and host certain events for the public, [SPF] had to keep the Complex closed for a considerable period, and subsequently reopen at significantly reduced capacity," and, "instead of

allowing staff working out of the Complex to use the office space, staff members were sent home, and in-office operations subsequently resumed at markedly reduced capacity." *Id.*

16. Regarding 76ers LP specifically, Plaintiffs allege that "[e]very year, hundreds of thousands of fans attend the Team's home games at the Center," and 76ers LP "earns substantial annual revenue from home games." Compl. ¶ 4. Plaintiffs suggest that from March 19, 2020 until March 13, 2021, Plaintiffs were not able to host any fans at the Center; "[n]ot until March 14, 2021 did Plaintiffs host fans at the Center and only at 15% capacity (approximately 3,000 fans)." *Id.* ¶¶ 67, 76. Plaintiffs allege that "the Team was unable to sell tickets or derive revenue from hosting games," and that "[t]he loss of ticket sales, sponsorship, and other revenue was considerable." *Id.* ¶ 97. Based on publicly available information, 76ers LP's annual sales are estimated to be approximately $150 million. *See* Ex. B, Experian Commercial Credit Scores Report, at 3; Ex. C, Experian Powered Business Data Report, at 2. Thus, just one month of lost income would far exceed the $75,000 jurisdictional threshold. Subject to their terms, conditions, and exclusions, 76ers LP's insurance policies provide business income coverage up to $4 million each. *See* Ex. C to Compl., 76ers LP 2019-2020 Policy at Form PC 00 02 01 18T p. 1; Ex. D to Compl., 76ers LP 2020-2021 Policy at Form PC 00 02 01 19T p. 1. 76ers LP also seeks additional "broad and comprehensive" coverages, including "30 days of Civil Authority coverage; 30 days in Ingress and Egress coverage; Dependent Property coverage; Accounts Receivable coverage; and Sue and Labor coverage." Compl. ¶ 121. Thus, 76ers LP's claim plausibly exceeds $75,000.

17. As for SPF, although Hartford Fire has not located publicly available information regarding SPF's annual sales or revenues, its claim likely far exceeds $75,000 as well. Indeed, as alleged, both Plaintiffs "suffered significant financial loss." Compl. ¶ 15. Plaintiffs allege that SPF owns a training complex and office building – referred to as the "Complex" in the Complaint

– which is used "for a variety of administrative, managerial, and other operations connected to the Team and affiliated businesses." *Id.* ¶¶ 2, 6. Based on public reporting, the Complex is the largest in the NBA.[2] It is 125,000 square feet, includes two regulation-size basketball courts, a 2,800-square-foot player locker room, rooms for wellness, recovery and hydrotherapy, a restaurant, a private balcony, and film and press rooms. *See id.* It reportedly received a tax break of $82 million over ten years to locate to where it is in Camden. *See id.* Plaintiffs allege that SPF "had to keep the Complex closed for a considerable period," "subsequently reopen at significantly reduced capacity," and, "instead of allowing staff working out of the Complex to use the office space, staff members were sent home, and in-office operations subsequently resumed at markedly reduced capacity." *Id.* ¶ 13. Subject to their terms, conditions, and exclusions, SPF's policies provide business income coverage up to almost $10 million each. *See* Ex. A to Compl., SPF 2019-2020 Policy at Form PC 00 02 01 18T p. 1; Ex. B to Compl., SPF 2020-2021 Policy at Form PC 00 02 01 19T p. 1. SPF also seeks additional "broad and comprehensive" coverages, including "30 days of Civil Authority coverage; 30 days of Ingress and Egress coverage; Dependent Property coverage; Accounts Receivable coverage; and . . . coverage for the costs incurred to take all reasonable steps to protect Covered Property from further loss or damage, commonly known as 'Sue and Labor' coverage." Compl. ¶¶ 106-107. Thus, SPF's claim plausibly exceeds $75,000.[3]

---

[2] *See* https://www.nj.com/camden/2016/09/sixers_open_training_facility_in_camden_photos.html.

[3] Although generally "multiple plaintiffs may not aggregate separate and distinct claims to reach the amount in controversy required for diversity jurisdiction," *Plunkett v. Nationwide Mut. Ins. Co.*, No. 14-6545, 2014 WL 7271380, at *2 (E.D. Pa. Dec. 22, 2014) (citation omitted), here, Plaintiffs' claims are not separate and distinct. Plaintiffs are related parties with overlapping facilities (Compl. ¶ 6) and the claims not only arise out of the same case or controversy, they seek the same relief based on the same facts in the same sole cause of action (Count I for declaratory relief) in the same Complaint. Where, as here, there is complete diversity of citizenship and at least one named plaintiff's claim satisfies the amount in controversy requirement, a district court may exercise supplemental jurisdiction over the claims of any other plaintiff with respect to the same case or controversy. *See Exxon Mobil*

18. In short, while Hartford Fire denies that Plaintiffs are entitled to any recovery at all in this case, the amount in controversy plausibly exceeds $75,000, exclusive of interests and costs.

**C. The Other Procedural Requirements for Removal are Satisfied**

19. This Notice of Removal is being filed within 30 days of service, and less than one year after commencement of this action, in accordance with 28 U.S.C. § 1446.

20. Attached hereto as Exhibit A is "a copy of all process, pleadings, and orders served upon" Hartford Fire. *See* 28 U.S.C. § 1446(a).

21. A copy of this Notice of Removal is being filed with the Prothonotary of the Philadelphia County Court of Common Pleas and is being served on counsel of record pursuant to 28 U.S.C. § 1446(d).

22. Under 28 U.S.C. § 1441(a), venue is proper in this Court as a district or division embracing the place where the state action was pending.

**III. CONCLUSION**

For the foregoing reasons, Hartford Fire respectfully provides notice of the removal of this action to this Court, and requests that this Court assume jurisdiction and proceed with this case as though it was originally filed in this Court.

---

*Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005). In any event, Plaintiffs' claims here do not need to be aggregated. The amount in controversy for both Plaintiffs, individually and cumulatively, allegedly exceeds $75,000.

Respectfully submitted,

By: /s/ Richard D. Gable, Jr.
　　Richard D. Gable, Jr.
BUTLER WEIHMULLER KATZ CRAIG, LLP
Bar No.: 65842
1818 Market Street
Suite 2740
Philadelphia, Pennsylvania 19103
Phone: 267-507-1410
rgable@butler.legal

Sarah D. Gordon
John J. Kavanagh
Conor P. Brady
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: 202-429-8005
sgordon@steptoe.com
jkavanagh@steptoe.com
cbrady@steptoe.com
*Pro Hac Vice Applications Forthcoming*

*Counsel for Hartford Fire Insurance Company*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been furnished to all counsel of record by ECF on April 6, 2022.

/s/ Richard D. Gable, Jr.
Richard D. Gable, Jr.
BUTLER WEIHMULLER KATZ CRAIG, LLP
Bar No.: 65842
1818 Market Street
Suite 2740
Philadelphia, Pennsylvania 19103
Phone: 267-507-1410
rgable@butler.legal