# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SPF OWNER LLC and<br>PHILADELPHIA 76ERS, L.P.<br><br>                  Plaintiffs,<br><br>     v.<br><br>HARTFORD FIRE INSURANCE COMPANY,<br><br>                Defendant. | Case No. 2:22-cv-01333-MMB |

**PLAINTIFFS' MEMORANDUM OF LAW REGARDING THE IMPACT OF THE THIRD CIRCUIT'S RULING IN *WILSON V. USI INSURANCE SERVICES, LLC* ON DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

/s/ *Marni S. Berger*
Robert J. Mongeluzzi
Jeffrey P. Goodman
Marni S. Berger
Samuel B. Dordick
**SALTZ MONGELUZZI &**
**BENDESKY P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: 215-496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
mberger@smbb.com
sdordick@smbb.com

i

I.    **OVERVIEW OF** *WILSON V. USI INSURANCE SERVICES, LLC*, **— F.4th—**
2023 WL 116809 (3d Cir. Jan. 6, 2023) AND PLAINTIFFS' READILY
DISTINGUISHABLE ALLEGATIONS

A.  *Wilson v. USI Insurance Services, LLC*

The COVID-19 business interruption matters of fourteen different businesses were
consolidated on appeal to the United States Court of Appeals for the Third Circuit in the matter of
*T*. These businesses operated out of Pennsylvania, New Jersey, New York, Maryland and Delaware
in the food service, medical health and wellness, art, music, and legal sectors. *Id.* at 22.
Specifically, the appellants were comprised of a catering business, an eye care center, an
entertainment production company, several restaurants, taverns, bars, event centers (and their
operators), a restaurant group, a law office, an art gallery, an optician's office, and a hearing center.
*Id.* Each of the appellant businesses either closed or significantly limited their operations after the
governors of their respective states issued orders to curb the spread of COVID-19. *Id.*
Significantly, however, none of the appellant businesses whose claims were at issue in *Wilson*
were the operators of a major professional sports team such as the Philadelphia 76ers ("the Team")
that hosts home games at an arena like the Wells Fargo Center ("the Center") where crowds gather
thousands at a time, or the owners of a training complex and office building ("the Complex") out
of which a major professional basketball team such as the Team practices. Likewise, none of the
businesses alleged that their functionality was nearly eliminated or destroyed due to the imminent
risk that COVID-19 would be present to such an extent as to make their properties either unsafe
or uninhabitable.

In its recent January 6, 2023 ruling in *Wilson*, the Third Circuit determined that none of the
aforementioned appellant businesses alleged a "physical loss of or damage to" property under the
business income, extra expense, or civil authority provisions of their commercial property insurers'

policies so as to trigger coverage related to the loss of use of the insured properties in response to the COVID-19 Closure Orders. *Id.* at 41. Upon consideration of *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) and *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418, 2014 WL 6675932 at *6 (D.N.J. Nov. 25, 2014), the Third Circuit held that the actual or suspected presence of the coronavirus on the insured premises, ***alone***, does not constitute a loss. *Id.* at 38 (emphasis added). However, the Third Circuit recognized (consistent with Plaintiffs arguments in this matter to date) that, under *Port Authority*, "there is no physical loss ***until*** the substance is 'in such form or quantity as to make the building unsafe.'" *Id.* The Third Circuit further recognized: "And here, no business alleged that the coronavirus was present in its property in such a form or quantity as to make the property dangerous and uninhabitable." *Id.* at 39. No threat of such a release was pled either. For these reasons, and without consideration of the Wood Disease exclusion or any other exclusions at issue on appeal in *Wilson*, the Third Circuit determined that the appellants did not meet their burden of establishing a valid claim for coverage. *Id.* at 41.

### B. Plaintiffs' Readily Distinguishable Allegations

Plaintiffs are SPF Owner, LLC (Plaintiff 1) and Philadelphia 76ers, L.P. (Plaintiff 2) (collectively, "Plaintiffs"). *See* ECF Doc. No 1-1, at ¶¶2-3. Plaintiffs' Complaint pleads that Plaintiff 1 operates the training complex located at 3 Banner Way in Camden, New Jersey and Plaintiff 2 operates the NBA team which plays its home games at the Center. *See id.* At paragraph 12 of their Complaint, Plaintiffs allege: "COVID-19 was present at the Covered Properties. It entered the air and surfaces of the Covered Properties when infected persons were present, and the properties became unusable in the way that they had been used before the COVID-19 pandemic." *See id.* at ¶12. Plaintiffs also plead that, "[i]nstead of being able to allow fans into the Center to

2

enjoy professional basketball and other sporting events, concerts, entertainment events…. the Center had to be closed, and upon its reopening…attendance capacity was substantially limited." *See id.* at ¶13. Likewise, Plaintiffs plead, "the actual presence of COVID-19 and the probability of illness prevents the Covered Properties from functioning in their normal and ordinary way." *See id.* at ¶19. "COVID-19 was physically present in and around the Covered Properties, impairing the Covered Properties' function for their ordinary and intended uses, forcing their closures, and requiring steps to be taken to physically eradicate the disease and restore the Covered Properties to their ordinary fully usable and functional state." *See id.* at ¶21. Moreover, "[t]he threat of the continued presence of COVID-19 in the air, surfaces, and interior space also impaired the ability of Plaintiffs to fully utilize the covered properties as intended." *See id.* at ¶14.

It is further alleged by Plaintiffs that "[o]n numerous dates in 2020 and 2021, COVID-19 was physically present at the Center and surrounding properties as well as the Plaintiffs' other Covered Properties and caused direct physical loss of and direct physical damage to those properties by physically altering their condition such that extensive and expensive mitigation measures were needed to make the Covered Properties fit for their intended purposes." *See id.* at ¶92. It was the decision of the NBA to suspend the 2019-2020 season effective March 11, 2020—a week prior to the issuance of the first Closure Order by Pennsylvania Governor Tom Wolf. *See id.* at ¶67; ¶92. In fact, before reopening at extremely limited capacity on March 14, 2021, new state-of-the-art HVAC, air filtration and water sanitizing systems were installed at the Center, and mobile ticketing with touchless entry points along with mobile ordering for food and drink as well as professional deep cleaning efforts were put into effect. *Id.* at ¶101. "The air filtration system replaces all the air in the Center's seating bowl in less than 30 minutes." *Id.* Large air filtration units were installed in the locker rooms as well. *Id.* At the Complex, advanced air purifiers were

installed, and customized lockers were constructed with increased distance between them. *Id.* at ¶102. "Plaintiff 1 also invested in UV lighting, air purifiers, and air purification systems." *Id.* at ¶104.

Throughout the Complaint, the physical nature of COVID-19 and its ability to cause physical loss of or physical damage to property was pled with specificity. For instance, Plaintiffs clearly state that one key issue in this case is whether COVID-19 in the airspace constitutes direct physical loss or damage. *Id.* at ¶34. To this end, it is plead that "when individuals carrying COVID-19 breathe, talk, cough, or sneeze, etc., they expel aerosolized droplet nuclei…that remain in the air. This process alters the structural properties of air in the buildings." *Id.* at ¶54. "The small droplets remain in the air as an aerosol, which can remain suspended in the air for hours, travel prolonged distances indoors along air currents induced by heating and ventilation ("HVAC") system[s], and travel from room to room, infecting persons directly through contact with, and inhalation of, the aerosol. Particles from the air can also contaminate surfaces." *Id.* at ¶38.

## II. *WILSON V. USI INSURANCE SERVICES, LLC* IS NOT DISPOSITIVE BECAUSE PLAINTIFFS' THEORY OF LIABILITY WAS NOT INVALIDATED IN *WILSON*.

*Wilson* is not dispositive of the issues in this matter. First, the insured properties of the appellants in *Wilson* were not subject to the same imminent risks posed by COVID-19 that Plaintiffs' Covered Properties were because of the fundamental differences in the nature of Plaintiffs' operations as the operator of the Complex and operator of the Team that hosts home games at the Center. Second, Plaintiffs' have pled an imminent risk of the Covered Properties' functionality having been nearly eliminated by COVID-19.

The weight of *Wilson* must be viewed through the lens of the business operations for which the loss of business income is sought. Here, Plaintiffs rely upon hundreds of thousands of fans

gathering at one time to observe the Team play at the Center. *See* Doc. No. 1-2, at ¶4. Naturally, during home games at the Center, fans scream and cheer for the Team together in tight crowds. Obviously, for Plaintiffs, the ability for the respiratory droplets to have expelled in large quantity and/or form and substantially change the object, surfaces, and air of the Covered Properties if the Center were to remain open was both imminent and real. *See id.* at ¶60. Thus, the fundamental difference between Plaintiffs' business operations and the business operations of the appellants at issue in *Wilson* is significant. Nowhere in *Wilson* did the Court address how crowd gathering, thousands at time, could have utterly eviscerated the functionality of the insured properties at issue in the consolidated matters. Therefore, the stark differences in Plaintiffs' operations and those of the appellants in *Wilson* remove the force and effect of *Wilson* from the issues raised in this case.

What the Third Circuit did make clear in *Wilson* is just as, if not more, important than what it did not. As noted above, the Third Circuit held that the "businesses therefore must show that the functionalities of their properties were nearly eliminated or destroyed such that the structures were made useless or uninhabitable, or that that there was an imminent risk of either of those things happening." *Wilson supra* at 31-32. The Third Circuit further explained that **"[n]o business alleged that the coronavirus was present in its property in such form or quantity as to make the property dangerous and uninhabitable."** *Id.* at 39 (emphasis added).

Here, Plaintiffs specifically plead that their functionality was impaired to such a great extent that, before the Center was reopened, remediation efforts had to be taken to eradicate the disease and restore the properties to their functional state. *See id.* at ¶¶21; 92. While the Complaint does not speak to the precise amount of COVID-19 that would have been imminently present (both on the surfaces *and in the air*) had the NBA not suspended the remainder of the 2019-2020 season—an issue of fact that must be explored through fact and expert discovery—it is alleged

that the immediate concern when the NBA took the prudent course of action of suspending the remainder of the 2019-2020 season was that the property would become dangerous and/or uninhabitable due to the form or quantity of COVID-19. *See e.g., id.* at ¶¶19-21, 61. This is why new HVAC, air filtration and water sanitizing systems were installed and hundreds of thousands of dollars were spent on professional deep cleaning at the Center. *See id.* at ¶101. The same holds true with respect to the air purifiers, new lockers and other remediation efforts taken at the Complex. *See id.* at ¶¶ 102-104. In reading the Complaint as a whole, the instrumentality that is alleged to pose an imminent risk of altering the Covered Properties, albeit at a molecular level that cannot be seen, and to have "nearly eliminated" their functionality, is undoubtedly COVID-19. For these reasons, *Wilson* is not dispositive, and Plaintiffs should be permitted the opportunity to explore their allegations regarding the near elimination of the Covered Properties' functionalities and the specific form and quantity of COVID-19 that was imminently present thereupon.

Respectfully Submitted,

/s/ *Marni S. Berger*
Robert J. Mongeluzzi
Jeffrey P. Goodman
Marni S. Berger
Samuel B. Dordick
**SALTZ MONGELUZZI &
BENDESKY P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: 215-496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
mberger@smbb.com
sdordick@smbb.com

<u>**CERTIFICATE OF SERVICE**</u>

       I, Marni S. Berger, hereby certify that on this 17th day of January 2023, a true and correct copy of the foregoing Memorandum Regarding the Impact of the Third Circuit's Ruling in *Wilson v. USI Insurance Services, LLC* on Defendant's Motion to Dismiss Plaintiffs' Complaint was filed electronically via the ECF filing system and was served electronically on all counsel of record.


                             */s/ Marni S. Berger* _____